# CHARLESTON.

McKinzie v. Hatfield, Mayor etc., *et als.*
Chancey v. Hatfield, Mayor etc., *et als.*
Kennedy v. Hatfield, Mayor etc., *et als.*
Hatfield v. Hatfield Mayor etc., *et als.*

Submitted January 26, 1916. Decided January 26, 1916.

Elections—*Determination of Result—Evidence—Certificates—Ballots.*
   Certificates of the result of an election, made by the commissioners at the voting precinct, are prima facie evidence of such result. The ballots, if identified as the same cast, are primary and higher evidence; but when it appears that such ballots have been tampered with and altered, they lose their character as primary evidence, and the result of the election will be ascertained and governed by such certificates.

Separate petitions in mandamus by Dan McKinzie, by N.

L. Chancey, by Young Kennedy, and by A. B. Hatfield against
A. B. Hatfield, Mayor, etc., and others.

*Peremptory writs awarded.*

*Goodykoontz & Scherr,* for petitioner.

*Stokes & Bronson* and *J. H. Greene,* for respondents.

Mason, Judge :

The town of Matewan is a municipal corporation created
and existing under Chapter 47 of the Code. The elections of
municipal officers of the said town are required by law to be
held annually on the first Thursday of January.

For several years there have been recognized in said muni-
cipality two political organizations—the one known as the
"Independent League" party, and the other as the "Citizens
Party". There were to be voted for at the last town election,
held Thursday, January 6, 1916, candidates for mayor, re-
corder, and five members of the council. The members of the
"Independent League" party selected candidates to be voted
for as follows: Mayor, G. T. Blankenship; recorder, James
Albert; councilmen, W. E. Boggs, H. C. Combs, Epp Steel;
S. T. Chambers, and George Booth. Their names were printed
on the official ballot as candidates. A ticket seems to have
been selected by the "Citizens Party", but on account of some
irregularity, the names were not placed on the official ballot.
So that the official ballot contained the names of no candidates
except those nominated by the "Independent League" party.
Persons who desired to vote for others than those whose names
were on the official ballot, were compelled to write them on the
ballot. These names were written on the ballots with lead
pencils.

After the close of the election, the commissioners and the
clerks proceeded at once to ascertain the result. It was ascer-
tained that there had been cast 171 votes—one ballot was
blank—leaving 170 votes to be counted. The official ballots
provided for the election and not so used, were destroyed.
The result ascertained at the time by the commissioners was
as follows: For mayor, G. T. Blankenship received 80 votes,
A. B. Hatfield received 90 votes; for recorder, James Albert

received 82 votes, L. N. Chancey received 86 votes; for councilmen, W. E. Boggs received 84 votes, H. F. Hope received 88 votes, H. C. Combs received 81 votes, Dan McKinzie received 82 votes, Epp Steel received 88 votes, S. T. Chambers received 82 votes, Young Kennedy received 82 votes, George Booth received 80 votes, and F. M. Massie received 85 votes. The result as thus ascertained was the election of Hatfield, Chancey, Hope, Steel, Massie, and Boggs, and a tie between Kennedy, Chambers, and McKinzie, each receiving 82 votes. The petition alleges that Chambers only received 80 votes, making a tie between Kennedy and McKinzie. The names of none of the persons appearing to be elected, had been printed on the official ballot except Epp Steel, and he seems to have been voted for by both parties. Only one certificate of the result of the election was prepared and signed at that time. This certificate purports to have been signed by all the commissioners, but there is a controversy as to the signature of one of the commissioners.

When the result of the election was ascertained, as above stated, and a certificate made up and signed by the commissioners, there arose some confusion and contention in regard to sealing the envelope containing the ballots; and thereupon two of the commissioners, Crawford and Bachman, took charge of the ballot box and the ballots, and carried them away and kept them until the next day. These ballots were unsealed, and the two commissioners were antagonistic to the "Citizens Party" candidates. The next day after the election the ballot box, ballots, and other papers were delivered to the Matewan National Bank, where they remained until the following Tuesday, January 11,—the time fixed by law for canvassing the vote by the town council. On that day the council met as a canvassing board, for the purpose of canvassing the vote. The ballots, papers, etc. were laid before the council. Counsel for the "Citizens Party" candidates asked to be permitted to be present during the canvass, but the request was denied and counsel excluded from the room. The members of the council proceeded to canvass the vote and to declare the result of the election. The following is the result as declared by the canvassing board: For mayor, G. T. Blankenship received 94 votes, A. B. Hatfield received 73 votes; for recorder, J. S.

Albert received 87 votes, M. L. Chancey received 80 votes; for councilman, W. E. Boggs received 84 votes, H. F. Hope received 85 votes, H. C. Combs received 86 votes, Dan McKinzie received 79 votes, Epp Steel received 160 votes, S. T. Chambers received 88 votes, Young Kennedy received 80 votes, George Booth received 88 votes, and F. M. Massie received 77 votes.    Thereupon the said canvassing board caused certificates of election to be issued to said Blankenship for mayor, to said Albert for recorder, and to said Hope, Combs, Steel, Chambers, and Booth for councilmen.

Hatfield, Chancey, McKinzie, and Kennedy, who were ascertained by the commissioners of election to be elected to the offices of mayor, recorder, and councilmen, have asked this court for writs of mandamus, directed to the mayor and common council of the town of Matewan, ''commanding them to immediately convene as a board of canvassers for said town and reject the result of said election as ascertained by said recount, and to take and certify the result of said election returns as made and certified by the commissioners of said election, so far as respects your petitioners, and to issue and deliver to your petitioners certificates of election'' to the offices as named above.    The mayor and councilmen of the town of Matewan demurred to the petitions and filed answers.

Four different petitions have been filed, but as the facts are practically the same in all, and all ask for similar relief, by consent of the parties the cases have been consolidated and heard together, the evidence filed in any one case to be used in the others as far as applicable.

It is insisted by the petitioners that the ballots cast by the voters at the election were so changed after they were cast that the true result of the election does not appear from the face of the ballots, and that the certificates as made at the close of the election should be taken as declaring the true result of the election.    The respondents insist that the ballots are the best evidence, and that the certificates as made up in the case should be disregarded.

Upon the presentation of the original papers to this court, we find a certificate of the result of the election as ascertained by the commissioners holding the election.    We further find

the ballots and certificates of the result of the election as certified by the board of canvassers.

The fact that the ballots were altered after the close of the election and before they were submited to the town council sitting as a canvassing board, will clearly appear by observing the votes as received by the different candidates as shown by the ballots when counted by the election commissioners at the close of the election, and the votes received by the same candidates as shown by the ballots when delivered to the board of canvassers.   The ballots when counted by the commissioners showed that Blankenship received for mayor 80 votes, and Hatfield received for mayor 90 votes; and the ballots when presented to the town council for canvass, showed that Blankenship received for mayor 94 votes, and Hatfield 73 votes. The ballots when counted by the election commissioners showed that Albert received for recorder 82 votes, and that Chancey received 86 votes; then when the ballots were submitted to the town council as a canvassing board, they showed for this office that Albert's received 87 votes, and that Chancey received 80 votes.   Equally great discrepancies appear in the votes received for members of the council, as shown by the ballots upon these two occasions.   The accuracy of the count made upon neither of the occasions is questioned.   J. F. Crawford, one of the commissioners whose name is signed to the certificate as made up at the close of the election, says he did not sign the certificate, but he does not challenge the accuracy of the count.   When we consider the undisputed facts that the ballots were taken possession of by two of the commissioners, so placed in a box that there was ample opportunity to alter them, and kept by these commissioners until the next day, and when next examined by the officers having the right to do so, they were found to differ widely from their condition when taken possession of by the commissioners, the proof is conclusive that some one has tampered with them.   It must be so if the count made by the election commissioners and the count made by the convassing board are both correct; and there is no proof whatever to discredit the accuracy of these counts.

The discrepancy between the certificate and the recount would not alone alter the general rule.   Inspection of the bal-

lots shows that many of them have actually been altered, and the discrepancy between the certified result and the result of the recount substantially corresponds and agrees with the number of alterations found. Explanation of the discrepancy is found in the fraudulent alterations. Under such circumstances, the certificate is obviously the safer guide and better evidence than the ballots.

The town council had before it the certificate of the result of the election, made by the election commissioners, and also the ballots. If the ballots had not been discredited, they would have been the primary and higher evidence, ''but, in order to continue the ballots controlling as evidence, it must appear that they have been preserved in the manner and by the officers prescribed in the statute, and that while in such custody they have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with. If there has been an opportunity for tampering with ballots, they lose their character as primary evidence.'' *Dent* v. *Board of Commissioners*, 45 W. Va. 750. In the case at bar, we have evidence not only of the opportunity of persons to alter or tamper with the ballots, but we find the positive evidence that they have been tampered with and altered.

Excluding the ballots, we have left as evidence the certificate prepared by the commissioners of election. This certificate having been prepared in the presence of all the election officers and its correctness not having been questioned, must be taken as conclusive in the absence of any other evidence contradicting or tending to contradict it.

The question of whether or not there is a tie vote between two or more of the candidates, and the question of the eligibility of candidates, will have to be determined by the proper municipal officers, after the result of the election shall have been determined.

The town council sitting as a canvassing board to ascertain and declare the result of the election, having declared the result from the ballots, should be required to reconvene and declare the result from the certificate of the result of the election made by the commissioners, and issue certificates of election to the persons entitled thereto as appears from said

certificate; and the writs of mandamus should issue requiring the said council so to act without delay.

                                        *Peremptory writs awarded.*