STATE *ex rel.* GREENBRIER COUNTY
AIRPORT AUTHORITY,

*a public corporation*

*v*

SAM HANNA, SECRETARY OF GREENBRIER COUNTY
AIRPORT AUTHORITY,

*a public corporation*

*and*

COOPER P. BENEDICT

*v*

GREENBRIER COUNTY AIRPORT AUTHORITY,
*a public corporation, et al.*

(Nos. 12627 and 12629)

Submitted November 29, 1966.
Decided Prepared Order February 21, 1967.

(Opinion Filed: March 7, 1967)

BERRY, BROWNING, JUDGES, dissenting

*C. Donald Robertson,* Attorney General, *Thomas B. Yost,* Assistant Attorney General, *Edgar L. Smith,* for relator (No. 12627).

*Jackson, Kelly, Holt & O'Farrell, Homer A. Holt, James K. Brown, Haynes & Ford, Sheldon E. Haynes,* for appellant (No. 12629).

*Fred M. Frisk, Jr.,* Assistant Attorney General, *E. D. Knight, Jr.,* for respondents (No. 12627).

*Edgar L. Smith, Thomas B. Yost,* Assistant Attorney General, for appellees (No. 12629).

HAYMOND, JUDGE:

The controlling question in these two companion cases which, though not consolidated, were argued together and submitted for decision upon the record and the briefs and the oral arguments of counsel, relates to the constitutionality of a statute which authorizes the creation by the County Court of Greenbrier County

of an airport authority and empowers the authority to construct, maintain and operate an airport in that county. The statute in question is Chapter 62, Acts of the Legislature, Regular Session, 1966, known as Senate Bill No. 66, and the proceedings in which its constitutional validity or invalidity must be determined are an original proceeding in mandamus, in which this Court issued a rule returnable on a former day, and a civil action, instituted in the Circuit Court of Greenbrier County on May 31, 1966 and now pending in this Court upon appeal from the final judgment of the circuit court rendered July 26, 1966.

On February 21, 1967, this Court, by order, refused to grant the writ prayed for by the petitioner in the mandamus proceeding and dismissed that proceeding; and on the same day this Court, by order, reversed the judgment of the circuit court rendered July 26, 1966 denying a motion of the plaintiff to vacate and set aside its judgment of July 9, 1966, and reversed the judgment rendered July 9, 1966 insofar as it held and declared Senate Bill No. 66, Chapter 62 Acts of the Legislature, Regular Session, 1966, to be constitutional and valid, except as to Section 14 of that Act, and reversed that judgment insofar as it denied the plaintiff the injunctive relief sought in his complaint and affirmed the judgment of July 9, 1966 insofar only as it held and declared Section 14 of the Act to be unconstitutional; and by its order of February 21, 1967 this Court remanded the foregoing civil action to the Circuit Court of Greenbrier County with directions that it grant to the plaintiff the relief prayed for in his complaint.

This opinion, which applies to both proceedings, is now filed for the purpose of stating the reasons which caused this Court to deny the relief sought in the mandamus proceeding and to dismiss that proceeding, and to reverse, as indicated, the judgments in the civil action and to remand that action to the Circuit Court of Greenbrier County with the specified directions.

The statute under consideration in these proceedings, the constitutionality of which is challenged in the civil action of Benedict v. Greenbrier County Airport Authority and others here on appeal and is asserted and defended in the mandamus proceeding, contains twenty separate sections, was passed by the Legislature of West Virginia on February 4, 1966, and has been in effect since its passage. To the extent here pertinent it provides that the County Court of Greenbrier County is authorized to create an airport authority and to provide for its membership and the purposes for which it is created; for the appointment and removal of the members of the authority; for its acquisition of real estate and personal property, and the acquisition, construction, improvement, maintenance and operation of a public airport; for the corporate existence of the authority; for the issuance of mortgage bonds, revenue bonds, other bonds, debentures, notes and securities and security for their payment; for the exercise of the power of eminent domain by the authority; for tax exemption for its property, funds and obligations; for the authority to lease the airport and for the County Court of Greenbrier County to become the lessee of such airport and pay rental for its use and operation; for contributions to the fund of the authority by the County Court of Greenbrier County and other persons; for keeping the funds and accounts of the authority; for the disposition of its surplus funds; for covering its employees by Workmen's Compensation; and for the dissolution of the authority.

Section 1 of the Act provides that the County Court of Greenbrier County is authorized to create and establish a public agency to be known as ''The Greenbrier County Airport Authority'' for the purpose mentioned in the statute.

Section 2 provides that the authority is authorized and empowered to acquire, equip, construct, improve, maintain and operate a public airport with all usual

and convenient appurtenances and facilities in Greenbrier County.

Section 3 provides that the management and control of the airport, its property, operations, business and affairs shall be lodged in a board of five persons who shall be known as "Members of the Authority" and that such members shall be appointed by the County Court of Greenbrier County; that one of such members shall be a member of the county court of that county and that of the remaining four members no more than two shall be members of the same political party.

Section 9 provides that the airport authority shall have power and authority, among others, to acquire lands and hold title to such lands in its own name; to purchase, own, hold, sell and dispose of personal property and to sell, lease or otherwise dispose of any real estate which it may own; to borrow money and execute and deliver negotiable notes, mortgage bonds, other bonds, debentures, and other evidences of indebtedness, and to give security for their payment by mortgage, deed of trust, or other security agreements with respect to its airport property and facilities in connection with the issuance of mortgage bonds, and to raise funds by the issuance and sale of revenue bonds in the manner provided by the applicable provisions of Article 4A, Chapter 8, Code, 1931, as amended.

Section 14, the validity of which is also involved in these proceedings, provides that the airport authority may lease its airport and facilities to the County Court of Greenbrier County or other available lessee at such rental and upon such terms and conditions as the authority shall deem proper but preference is given to the county court to act as such lessee; and the County Court of Greenbrier County is authorized to enter into such lease at such rental and upon such terms and conditions as it shall deem proper and to levy taxes as provided by law for the purpose of paying the rent for such airport and its facilities.

In the mandamus proceeding the petitioner alleges that it is presently engaged in the construction of the airport authorized by the foregoing statute at Maxwelton, in Greenbrier County, and requires money to be raised by the sale of revenue bonds to meet the construction costs of the airport; that by proper action of its members a resolution was adopted July 21, 1966 authorizing the issuance and sale of $400,000.00 in airport revenue bonds and that by a subsequent resolution adopted September 13, 1966 the chairman and the secretary of the authority were directed to issue, under their signature and the seal of the authority, an interim certificate in the amount of $50,000.00 to be offered for sale to a designated bank in East Rainelle, West Virginia, whose officers had indicated an interest in the purchase of such certificate; that the secretary of the authority, who has the mandatory and nondiscretionary statutory duty to affix the seal of the authority and to place his signature upon the certificate, has refused and continues to refuse to affix the seal of the authority and place his signature upon the certificate because he entertains the belief that the statute is unconstitutional, and the petitioner seeks a writ to require him to execute the certificate in the manner indicated and demanded by the petitioner.

The answer of the defendant in the mandamus proceeding admits the allegations of the petition and by his demurrer to the petition the defendant asserts for specified reasons that the statute is unconstitutional.

In his complaint in the civil action, here on appeal from the judgment of the Circuit Court of Greenbrier County, the plaintiff charges that the defendant Greenbrier County Airport Authority has designated a large part of plaintiff's farm as the site or location for the construction of an airport and has caused surveying to be done with the result that it proposes to occupy for such airport about 135 acres of his farm; that it has published in newspapers notices inviting sealed bids for labor, materials and equipment for the con-

struction of the airport but that neither the authority nor the County Court of Greenbrier County has acquired any interest in the lands of the plaintiff but that the plaintiff is informed and believes that the authority will institute an eminent domain proceeding, authorized by the statute, to acquire title to about 135 acres of his land. The plaintiff also charges, on information and belief, that the authority proposes to issue and sell revenue bonds as authorized by the statute in the manner provided by Article 4A, Chapter 8, Code, 1931, as amended, to raise part of the funds required for the construction of the airport, in the amount of approximately $500,000.00; that the power granted the authority by the statute to lease to the county court and the county court to lease from the authority the proposed airport and its facilities upon such terms and conditions as the county court shall deem proper and to authorize the county court to levy taxes for the purpose of paying the rent for such airport and its facilities constitutes a mere plan by which the county court can undertake to purchase the airport and its facilities upon an installment basis from funds derived from taxation to pay any revenue bond indebtedness of the authority and that such authorization, without the approval of a vote of the people of Greenbrier County, as required by Article X, Section 8, of the Constitution of this State, renders the statute unconstitutional, null and void and of no effect. The plaintiff also charges that the statute is unconstitutional, null and void and of no effect because violative of the provisions of Article VI, Section 39, of the Constitution of this State, in that it is a special act which has been enacted where a general law would be proper and could be made applicable to the case; and the prayer of the plaintiff, as set forth in his complaint, is that the statute be declared to be unconstitutional in its entirety, that the County Court of Greenbrier County and its individual commissioners be enjoined from levying any tax for the purpose of paying any rentals provided by the statute under any

lease of the airport to the county court by the Greenbrier County Airport Authority, and that the authority and its individual members be enjoined from seeking to acquire any part of the lands of the plaintiff in a proceeding in eminent domain.

The answer of the defendants admits most of the material allegations of the complaint but denies that the authority intends to institute an eminent domain proceeding against the land of the plaintiff, denies that the county court intends to lease any of the facilities of the airport or to levy any tax for that purpose, and denies the allegations of the complaint to the effect that the statute or any of its provisions is unconstitutional, null and void, but avers that the statute is not a special act that violates Article VI, Section 39, of the Constitution of this State.

The material facts involved in the mandamus proceeding are not disputed and there is little, if any, dispute in the material facts involved in the civil proceeding; and the identical question presented in each proceeding, involving the constitutional validity or invalidity of the statute, is a question of law.

The petitioner in the mandamus proceeding and the defendants in the civil action assert that the statute is valid and constitutional in all respects and is not violative of Article VI, Section 39, or of Article X, Section 8, of the Constitution of this State. On the contrary the defendant in the mandamus proceeding and the plaintiff in the civil action insist that the statute in its entirety is unconstitutional as violative of Article VI, Section 39, and that Section 14 is unconstitutional as violative of Article X, Section 8, of the Constitution of this State.

Article VI, Section 39, of the Constitution of this State, which has been considered by this Court in numerous cases, provides that the Legislature shall not pass local or special laws in any of eighteen enumerated instances and that it shall provide, by general

laws, for the previously specified special acts "and all other cases for which provision can be so made; and in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, nor in any other case in which the courts have jurisdiction, and are competent to give the relief asked. for."

It is conceded by the parties to each of the two proceedings that the statute here under consideration is a special act but they differ completely as to whether the special act is violative of and is prohibited by the constitutional provision that "in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, * * * ."

It is crystal clear, as conceded by the parties, that the statute in question is a special act and upon careful examination and consideration it is equally clear that it is a special act which has been enacted in a situation and for a purpose as to which a general law would be proper and can be made applicable. The act is limited to and deals solely with the airport in Greenbrier County but its provisions could properly be made applicable to an airport in any section of the State. There is nothing in the statute that indicates that the airport in Greenbrier County should be given authority and power that could not, with equal propriety, be given to an airport in any other of the fifty five counties of this State in which the same kind of airport could be constructed and would be desired by the people of any particular section. There appears to be no good reason why the subject of the creation, acquisition, construction, maintenance and operation of an airport and its facilities should not be authorized and dealt with by a general statute which would apply to the entire State and all of its political subdivisions. That an airport may properly be subjected to and dealt with by a general statute has been and was recognized by the Legislature of this State long prior to the enactment of the present statute. Before the

passage of Chapter 62, Acts of the Legislature, Regular Session, 1966, a general statute relating to airports, now designated as Chapter 8, Article 11, Code, 1931, was originally enacted by the Legislature as Chapter 61, Acts of the Legislature, Regular Session, 1929, and, as amended, has been in effect since its enactment. The existence of that statute amounts to a recognition by the Legislature that airports constitute a subject which should be properly dealt with by a general law and to which a general law is clearly applicable. *Brozka v. County Court of Brooke County,* 111 W. Va. 191, 160 S. E. 914.

In the *Brozka* case this Court held in point 2 of the syllabus that "A special legislative enactment, purporting to relieve the taxpayers of a particular municipality from the payment of county road taxes on all taxable property within the municipality, is void as in contravention of section 39 of Article VI of the State Constitution which provides that 'in no case shall a special act be passed, where a general law would be proper, and can be made applicable.' " When the special act, condemned in the *Brozka* case, was passed a general statute, which provided that the inhabitants of a municipality to construct and keep in repair the streets and highways within the municipality should not be required to pay any district road taxes, was in effect and applied to all the municipalities of the State. Under the general statute all municipalities were relieved from the payment of magisterial district road taxes but were not relieved from the payment of county road taxes which the special act was intended to accomplish for the particular municipality of Wellsburg. In discussing the purpose of the provision of the Constitution that "in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case," this Court, in the opinion in the *Brozka* case, used this pertinent language:

"The obvious purpose of this constitutional provision is to preserve uniformity and consistency in the statutory enactments of the commonwealth. The approach to this and similar matters must be with that background. 'If a general law exists which is applicable to a subject, the question whether such a law can be made applicable is resolved. The legislature has by the enactment of a general law practically decided the question. Hence if, while such a general law is in force, a special or local law is passed affecting the same subject and modifying the general law, the question of its validity is judicial; it will be held invalid in the case supposed, for, an applicable general law being in existence, it is no longer a question whether such a law can be made applicable; therefore the special or local law is prohibited.' Lewis' Sutherland Statutory Construction, Vol. 1, (2nd Ed.), page 340. * * * . To uphold enactments such as the one at bar would mean to make possible the destruction of uniformity of legislation in the state with reference to matters of general nature, and in direct conflict with the principle of certainty and uniformity in such matters as required by the constitution. * * * . The wisdom and justice of a constitutional provision which prohibits an act such as the one in question from making a change in a particular locality from a statewide policy, is evident and forceful. * * * ."

Other decisions of this Court, holding special acts invalid and unconstitutional as violative of the foregoing constitutional provision, are *State ex rel. The County Court of Cabell County v. Battle,* 147 W. Va. 841, 131 S. E. 2d 730, holding invalid a provision of a general statute which excluded without any reasonable basis certain public officers who would otherwise be subject to a general law on the same matter as violative of the constitutional provision which forbids special laws where a general law is proper or can be made applicable to the subject; *State ex rel. Dieringer v. Bachman,* 131 W. Va. 562, 48 S. E. 2d 420, in which a special act attempted to legislate as to civil service

members of the fire department of the city of Wheeling, was declared to be unconstitutional because it was a special act which dealt with the subject as to which a general law was proper and could be made applicable; *Baier v. The City of St. Albans*, 128 W. Va. 630, 39 S. E. 2d 145; *Truax-Traer Coal Company v. Compensation Commissioner*, 123 W. Va. 621, 17 S. E. 2d 330; *Groves v. County Court of Grant County*, 42 W. Va. 587, 26 S. E. 460, in which a provision of a statute relating to the relocation of the county seat of Grant County was held to be unconstitutional as violative of the provisions of Article VI, Section 39, of the Constitution of this State.

The objects and purposes sought to be accomplished by the invalid statute here under consideration can be fully realized and accomplished by proper amendment to the existing general statute dealing with aviation and airports, Chapter 8, Article 11, Code, 1931, as amended.

For the reasons stated this Court holds that Chapter 62, Acts of the Legislature, Regular Session, 1966, a special act authorizing the County Court of Greenbrier County to create an airport authority to construct, maintain and operate a public airport and appurtenances and facilities in that county, is unconstitutional, null and void in its entirety as violative of the provision of Article VI, Section 39, of the Constitution of West Virginia that "in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case,".

The provision of Section 14 of the statute that the County Court of Greenbrier County may levy taxes as provided by law for the purpose of paying the rent for the airport and its facilities is also unconstitutional, null and void because violative of the provisions of Article X, Section 8, of the Constitution of West Virginia that "no debt shall be contracted under this section, unless all questions connected with the same, shall have been first submitted to a vote of the people,

and have received three-fifths of all the votes cast for and against the same." The provision of the statute was conceded by all parties in the civil action while pending in the Circuit Court of Greenbrier County to be unconstitutional and that court held correctly that such provision was violative of the quoted provision of the Constitution and for that reason was unconstitutional, null and void.

In holding the statute under consideration unconstitutional in its entirety as violative of the pertinent provisions of Article VI, Section 39, of the Constitution of this State, and in holding the foregoing provision of Section 14 of the statute unconstitutional as violative of the pertinent provisions of Article X, Section 8, of the Constitution of this State, this Court is aware of the well recognized principle that "Every presumption is to be made in favor of the constitutionality of a statute, and it can never be declared unconstitutional except when it is clearly and plainly so. A reasonable doubt as to its unconstitutionality must be resolved in favor of the validity of the law." 17 M. J., Statutes, Section 29; *Tweel v. West Virginia Racing Commission,* 138 W. Va 531, 76 S. E. 2d 874; *Booten v. Pinson,* 77 W. Va. 412, 89 S. E. 985, L.R.A. 1917A 1244; *Groves v. County Court of Grant County,* 42 W. Va. 587, 26 S. E. 460. That principle, however, is inapplicable and not here controlling for the reason that the unconstitutional statute in its entirety is clearly and plainly violative of the applicable provisions of Article VI, Section 39, of the Constitution of this State, and the provision of Section 14 of the statute is equally clearly and plainly violative of the applicable provisions of Article X, Section 8, of the Constitution of this State. Another well established principle applies in these proceedings and requires the holding that the foregoing statute is unconstitutional. That principle is that it is the duty of a court to declare a statute invalid if its unconstitutionality is clear. *State ex rel. State Building Commission of West Virginia v. Bailey,* 151 W. Va. _____, 150 S. E. 2d 449;

*Nuckols v. Athey,* 149 W. Va. 40, 138 S. E. 2d 344; *Tanner v. Premier Photo Service, Inc.,* 147 W. Va. 37, 125 S. E. 2d 609; *Appalachian Power Company v. The County Court of Mercer County,* 146 W. Va. 118, 118 S. E. 2d 531; *State ex rel. Winter v. Brown,* 143 W. Va. 617, 103 S. E. 2d 892.

The petitioner in the mandamus proceeding and the defendants in the civil action cite and rely upon the decisions of this Court in *Meisel v. Tri-State Airport Authority,* 135 W. Va. 528, 64 S. E. 2d 32, in which this Court held that Chapter 142, Acts of the Legislature, Regular Session, 1949, creating the Tri-State Airport Authority, though a special act, did not violate the provisions of the Constitution of this State that "in no case shall a special law be passed, where a general law would be proper, and can be made applicable to the case,"; and *Kanawha County Public Library v. The County Court of Kanawha County,* 143 W. Va. 385, 102 S. E. 2d 712, in which this Court held that Chapter 178, Acts of the Legislature, Regular Session, 1957, a special act establishing the Kanawha County Public Library and requiring the County Court of Kanawha County to contribute to its support, was not invalid as in contravention of the provisions of Article VI, Section 39, or Article VIII, Section 24, of the Constitution of this State. Those cases are clearly distinguishable from the instant proceedings and do not apply to or control the decision of this Court in the proceedings here under consideration.

Special considerations existed in connection with the Tri-State Airport. It had been established by the cooperative efforts of five public bodies, the County Court of Cabell County, the County Court of Wayne County, the city of Huntington, the city of Kenova, and the town of Ceredo, each of which was a separate and distinct entity and each of which was independent of and not subject to control by any of the others. In addition a private civic organization known as the Huntington Industrial Corporation was involved in

the undertaking and had provided or raised the funds required to obtain the land on which the airport was located. Federal funds were needed to improve the airport and it is evident that the Federal authorities required a local sponsor who was authorized to enter into agreements with the Civil Aeronautics Administation and the State Board of Aeronautics. In answering the challenge that the special act creating the Tri-State Airport Authority was violative of Article VI, Section 39, of the Constitution of this State, this Court, in the opinion, said: "The answer to this question lies in the proposition that the grant of federal funds for airport construction requires a local sponsor authorized to enter into agreements with the Civil Aeronautics Administration, and with the State Board of Aeronautics. * * * . ", and made clear its holding by the use of this language: "Taking, as we do, an overall view of the case, as presented by this certificate, we hold that a resort to any general law will not suffice to protect the rights of the parties." There is no similar situation disclosed by the record in either of the instant proceedings. Here, instead of several independent and diverse public authorities, the principal participants in the undertaking are the County Court of Greenbrier County and its statutory creation, the airport authority, whose members are selected and approved by the county court, and that authority is necessarily subject in some degree to its direction and control.

The justification for the enactment of the special act relating to the Kanawha County Public Library and the considerations which distinguish the Kanawha County Public Library case from the instant litigation are stated in the opinion in that case in this language: "Certainly it could not be seriously contended that a general law would be proper to attain the results sought by the Legislature in requiring the respondent, the Board of Education and the City of Charleston, to make certain contributions for the support of a public library which has been in existence for more than fifty years. In many of the counties, there is no

public library.'' The situation disclosed by the quoted language shows clearly that as there was no public library in many counties and as the situation in connection with the Kanawha County Public Library was unusual and unique, a general law would not have been proper and could not have been made applicable to the case. Consequently, the special act, Chapter 172, Acts of the Legislature, Regular Session, 1957, establishing that public library and requiring the County Court of Kanawha County to contribute to its support, was not the kind of special act which the Constitution proscribes where a general law would be proper and can be made applicable to the case.

Mandamus lies to require the discharge by a public officer of a nondiscretionary duty, *State ex rel. Island Creek Coal Company v. Hanley,* 149 W. Va. 107, 138 S. E. 2d 848, and the numerous cases cited in the opinion in that case; *The W. E. Long Co.-Independent Bakers' Cooperative v. Burdett,* 147 W. Va. 177, 126 S. E. 2d 181, and the many cases cited in the opinion in that case; and if the statute upon which the petitioner in mandamus relies for the relief which it seeks were valid the petitioner would be entitled to the relief which it seeks in that proceeding. But inasmuch as that statute is unconstitutional, null and void as violative of the applicable provision of Article VI, Section 39, of the Constitution of this State, the petitioner has failed to show a clear legal right to the remedy which it seeks. For that reason the writ must be and it is denied and the proceeding in mandamus is dismissed.

This Court has repeatedly held that he who seeks relief by mandamus must show a clear legal right to the remedy. Syllabus 4, *State ex rel. Fox v. The Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield,* 148 W. Va. 369, 135 S. E. 2d 262; *Wilson v. The County Court of Logan County,* 150 W. Va. 544, 148 S. E. 2d 353; *State ex rel. Sams v. Ohio Valley General Hospital Association,* 149

W. Va. 229, 140 S. E. 2d 457; *State ex rel. Zagula v. Grossi*, 149 W. Va. 11, 138 S. E. 2d 356; *State ex rel. Wiley v. State Road Commission of West Virginia*, 148 W. Va. 76, 133 S. E. 2d 113; *State ex rel. Alexander v. The County Court of Kanawha County*, 147 W. Va. 693, 130 S. E. 2d 200; *State ex rel. Neal v. Barron*, 146 W. Va. 602, 120 S. E. 2d 702; *State ex rel. Evans v. Kennedy*, 145 W. Va. 208, 115 S. E. 2d 73, and the many cases cited in the opinion in that case. This the petitioner in the mandamus proceeding has failed to do.

Because of the unconstitutionality of the statute upon which the defendants in the civil action rely, the plaintiff in that action is entitled to the relief for which he prays, and the judgments of the Circuit Court of Greenbrier County, which denied him the relief to which he is entitled, are erroneous and must be reversed. Accordingly the judgment of the circuit court rendered July 26, 1966, denying the motion of the plaintiff in the civil action to vacate and set aside so much of its judgment entered July 9, 1966 as declares the provisions of Senate Bill No. 66, Chapter 62, Acts of the Legislature, Regular Session, 1966, to be in part constitutional and valid and denies the plaintiff the relief prayed for in his complaint and refuses to grant to the plaintiff a new trial, is reversed, set aside and annulled, and the judgment entered by the circuit court July 9, 1966, is affirmed insofar only as it holds Section 14 of the statute to be unconstitutional and invalid, but is reversed, set aside and annulled insofar as it holds the statute to be constitutional and valid, except as to Section 14, and is reversed, set aside and annulled insofar as it denies the plaintiff the injunctive relief which he seeks in his complaint; and the civil action is remanded to the Circuit Court of Greenbrier County with directions that it grant to the plaintiff the relief prayed for in his complaint, including the injunctive relief which he seeks in that proceeding.

Judges Browning and Berry dissent in each case and reserve the right to file dissenting opinions.

> *Writ denied and mandamus proceeding dismissed; Judgment reversed in part, Affirmed in part, and civil action remanded with directions.*

BERRY, JUDGE, dissenting:

I would affirm the Circuit Court of Greenbrier County in refusing to grant the injunction prayed for in the injunction proceeding and would grant the writ prayed for in the mandamus proceeding in these consolidated cases.

The same question involved in these cases was also involved in the case of *Meisel v. Tri-State Airport Authority*, 135 W. Va. 528, 64 S. E. 2d 32, and this Court, in 1951, held that the Act setting up the Tri-State Airport Authority in the *Meisel* case was not unconstitutional. The specific question involved in the Meisel case was whether the Act creating the Tri-State Airport Authority, which was a special Act, violated the provisions of Article VI, Section 39, of the Constitution of West Virginia, which provides that in no case shall a special Act be passed where a general law would be proper and could be made applicable to the case. In the case at bar, as in the *Meisel* case, federal funds are involved except that in the instant case the federal funds to be used are much larger and the question as to whether or not the Act was unconstitutional under the provisions of Article VI, Section 39, of the West Virginia Constitution, was answered in the Meisel case, wherein it was stated: "The answer to this question lies in the proposition that the grant of Federal funds for airport construction requires a local sponsor authorized to enter into agreements with the Civil Aeronautics Administration, and with the State Board of Aeronautics." If this was the reason, which the Court clearly indicated as a basis for holding that such an act was not uncon-

stitutional as being a special act, then it would apply with the same force and effect to the case at bar, because I am unable to distinguish the *Meisel* case from the instant case. The *Meisel* case involved a special act and the case at bar involves a special act. Federal funds were involved in the *Meisel* case and Federal funds are involved in the present case.

The general law applying to all counties in West Virginia with regard to airports, Chapter 8, Article 11, was in effect at the time the *Meisel* case was decided and is still in effect and apparently the special act in each case was used to implement the general law contained in Chapter 8, Article 11, and Chapter 8, Article 4a, Section 1 of the Code of West Virginia. No doubt the Federal Government would not grant funds to all counties to build airport under airport authorities as was done in the *Meisel* case and the case at bar, as well as many other counties under a special act, such as Harrison, Ohio, etc. Then, too, the financial condition of many of the counties of West Virginia would preclude and the terrain would not be suitable for such airports.

The only difference in the Meisel case from the case at bar is that two counties and three municipalities were involved in the airport authority in that case, but only one county is involved in the airport authority in the case at bar. It is contended that a general law could be passed by the legislature making the formation of airport authorities applicable to all counties in the state, which may be true, but it is also true that a general law could be passed by the legislature making the formation of airport authorities applicable to all municipalities and counties in the state which would cover the Meisel case in the same manner as it would in the instant case.

This Court has also held in the case of *Kanawha County Public Library v. County Court of Kanawha County*, 143 W. Va. 385, 102 S. E. 2d 712, that a special act setting up the Kanawha County Public Library did

not violate the provisions of Article VI, Section 39 of the Constitution of West Virginia. See also the many cases cited therein to the same effect.

It is also true that a general act could have been passed by the legislature granting all governmental units in West Virginia the right to establish county libraries, but all counties in West Virginia perhaps would not want a county library, and because of financial conditions and other reasons would be unable to establish a library. It was held in that case that as a general rule the legislature must determine, before passing such a law, whether or not a general law can be made applicable to the case and it cited the case of *South Morgantown v. Morgantown*, 49 W. Va. 729, 40 S. E. 15, in the fifth point of the syllabus, as follows: "Courts will not hold an act of the legislature to be contrary to the Constitution without great caution and unless it be manifestly and beyond doubt unconstitutional." It would appear that because of the division of this Court in connection with this case that there is some doubt as to the Act in question being unconstitutional. Then, too, when the Act is held to be unconstitutional in the case at bar it would appear that the special act establishing airports in Harrison County, Kanawha County, Mingo County, Ohio County, Fayette County, and others, will also be unconstitutional although some of the airports have been completed and in use for years. This may create other difficult situations.

It may be true, as stated by the majority opinion, that Section 14 of Chapter 62, Acts of the Legislature, 1966, creating the authority, is of doubtful constitutionality, but that depends largely on how it will be administered rather than on its specific wording, and the record does not show proper information upon which to decide that issue; but I am of the opinion that this Section 14 is severable under the provisions of Section 20 of the Act and that the *Meisel* case is also authority for this proposition in which case the

following language taken from point 5, syllabus, in the case of *Prichard v. DeVan, Mayor,* 114 W. Va. 509, 172 S. E. 711, was stated: " ' When a part of an Act is invalid but the remainder reflects the legislative intent and is complete in itself, then the remainder will be upheld ' ", * * * . This merely means that Greenbrier County cannot use taxes to pay off the long-term bonds of the Airport Authority, either directly or indirectly under the guise of paying rent, without complying with the provisions of Sections 7 and 8 of Article X of the Constitution of West Virginia when such provisions are applicable. If that were to be attempted under Section 14 the section would have to be held invalid. The Airport Authority, under the remaining provision of the Act would have to pay off the bonds and the interest thereon from the proceeds of the operation of the airport.

From the contents of this dissenting opinion it can be seen that if this Court would overrule the *Meisel* case I would perhaps not have dissented from the majority opinion, because in that event this Court would have been consistent in applying the law uniformly in such cases. It would appear that the decision in the *Meisel* case and the decision in this case merely tend for confusion and create a situation where the bench and bar in this State do not know how to interpret the law in advocating and disposing of cases wherein a question involving such authorities is concerned.

I am authorized to say that Judge Browning concurs in this dissenting opinion.